# SUPREME COURT

BERNARD CASSERLY, Receiver, &c., agt. DAVID S. MANNERS
et al.

*Reinsurance — its benefits for the company and not for particular policyholders.*

The law authorizing reinsurance was intended that when reinsurance is
made it should be made in the name of and for the benefit of the com-
pany, and not of individual policyholders.
Any construction placed upon the law authorizing reinsurance which
would allow reinsurance in favor of the policyholder, brings it into
conflict with the statute forbidding a corporation from giving prefer-
ences; whereas, if the reinsurance is made for the benefit of the company,
the two statutes do not conflict.
The allowing reinsurance is not for the benefit of individual policyholders,
but for the benefit of the whole body.

*Special Term, July,* 1874.

THE New Amsterdam Fire Insurance Company was a
corporation duly organized under the laws of the state of
New York in the year 1852. In the month of October,
1871, the defendants were the directors of said company, and
its assets, including capital and surplus, amounted on the first
day of that month to the sum, exceeding a little over
$400,000.

The said company had agencies for the transaction of the
insurance business in Philadelphia, Chicago and Milwaukee.

On the 8th, 9th and 10th of October, 1871, a large and
disastrous fire occurred in Chicago. All New York compa-
nies who had agencies in that city suffered immense losses,
the consequence of which was a panic among insurance men,

and a feeling that every company which had agencies in that city had become insolvent. On or about the 12th day of October, 1871, the directors of the New Amsterdam Company passed the following resolution :

"*Resolved*, That, provided the losses of the company by the fire at Chicago shall not exceed the amount of the capital and surplus of the company over and above reinsurance, excluding the lease of the company of No. 173 Broadway, that the stock of the company be filled up by the stockholders, *pro rata*, to any amount that may be required therefor." *

It was impossible to ascertain the amount lost by the New Amsterdam Insurance Company at once, in consequence of the great confusion arising from so great a calamity in Chicago, and the exact amount of the losses were not ascertained until the latter part of the month of November, when they were found to reach about the sum of $400,000.

On the 26th day of October, 1871, the directors of the New Amsterdam adopted the preamble and resolution following, to wit :.

" *Whereas*, In view of the great anxiety manifested by the policyholders of the New Amsterdam Fire Insurance Company in reference to its losses at Chicago ; and, whereas, our agents at that place have failed to furnish the company with a detailed statement of its losses ; and, whereas, under the circumstances, it is deemed advisable to reinsure all the policies taken at and issued from this office (not including agency policies), until such time as a satisfactory adjustment of such losses can be made ; and that such reinsurance shall be effected in some company where the same may be returned to this company when deemed advisable ; and as such arrangement can be made with the Home Insurance Company of New Jersey, with a fresh paid in capital ; therefore

" *Resolved*, That the officers be authorized and directed to reinsure said risks in said company in the name and for the benefit of the policyholders, and pay to said Home Insurance Company of New Jersey, $40,000, being the estimated

amount for said reinsurance; which reinsurance shall be accurately calculated by a person to be appointed by the board of directors of each company, and if said sum shall be deficient or in excess of the amount, the same to be paid by or returned to this company."

That the said Home Insurance Company was a New Jersey corporation, which had been organized some little time before the passage of this resolution, and had a paid up capital of $60,000, but had, up to this time, done little or no business. That the president and secretary of the Home Insurance Company were also the president and secretary of the New Amsterdam Insurance Company. The defendants, Wallis, Duryea, Brunges, Bearns, were also directors in the Home Insurance Company. On the twenty-seventh of October, the said sum of $40,000 was paid by the New Amsterdam Company to the Home Company, and the latter company insured in bulk the home risks of the New Amsterdam; but no policy was issued, nor was the consent of the policyholders of the New Amsterdam Company asked. The amount of the risks thus transferred amounted to about $10,000,000. Immediately after this time the officers of the New Amsterdam Company commenced negotiations with the policyholders at Chicago for a settlement of their losses as adjusted at fifty cents on a dollar, and procured a composition deed to be signed by most of the policyholders to that effect.

The said losses, if paid in full, would have exhausted the entire capital and surplus of said company, and the remaining policyholders would have been entirely without security.

The Home Insurance Company continued to do business only for a few months, and was then wound up. It paid promptly all losses which accrued upon the risks transferred from the New Amsterdam. On the 19th day of December, 1871, the plaintiff was appointed receiver of the New Amsterdam Company, it being declared to be insolvent, and this action is brought against the directors of said company to recover of them the $40,000 paid to the Home Insurance

Company, it being claimed to have been paid in violation of law.

*W. H. Peckham and E. R. Meade* for plaintiffs.

*John K. Porter, N. B. Hoxie and John Winslow* for defendants.

VAN BRUNT, *J.* — The foundation of the plaintiff's claim to a recovery in this action is, that the directors, by their action, have violated their duties, · as officers of the New Amsterdam Fire Insurance Company, in appropriating the $40,000 to the purposes which they did.

First, because the Home Insurance Company is a foreign corporation, excluded by the laws of this state from doing business therein; and, secondly, because the New Amsterdam had no power whatever to effect reinsurance in any company, in the manner which was done in this case.

I shall consider this last proposition first; and, in disposing of this question, I shall assume that the directors did not have a positive intent to commit a fraud, although their acts may have amounted, if unauthorized by law, legally to a fraud upon the creditors of the company. They certainly did not suppose that they were. violating any law — if they have done so. They supposed that, by arrangements which could be made with the creditors of the company at Chicago, that it would be able to continue business; but these expectations seem to have been based upon their being able to effect some compromise with their creditors.

The evidence of the case would seem to warrant the finding, however, that unless such compromise was effected there were very great doubts as to the ability of the company to go on with their business. I have been entirely unable to discover where the law gives any authority whatever for the effecting of a reinsurance in the manner in which this has been done.

It is true that the act under which fire insurance companies

are organized provides that any company organized under that act may effect reinsurance of any risks taken by them respectively; but is this power of reinsurance to be exercised for the benefit of the company or policyholder? Was it intended by that statute to allow the company, at its option, to give to a few favored policyholders the securities of two companies instead of one? Was the money contributed in premiums by policyholders to be used in procuring a reinsurance of policies in which they had no interest, and from which reinsurance they might not derive any benefit? Was it not intended that this reinsurance, when made, should be made in the name of and for the benefit of the company, and not of individual policyholders? If this is not the true construction of this law, then any insurance company in insolvent circumstances may, by reinsurance, use the whole of their assets to procure reinsurance, and thus deprive their creditors of any means of collecting their debts, and thereby giving a preference of the holders of policies whose losses shall accrue subsequent to such reinsurance; which our statute expressly forbids.

The insurance in this case was not for the benefit of the company. Even if every policy had been surrendered, no amount such as was paid for reinsurance would have been withdrawn from the creditors of the company. In fact the reinsurance was not made because of any anticipated benefit to the creditors of the company, but expressly to keep the business for the benefit of the New Amsterdam Company after they had settled their Chicago losses.

It will be noticed that the Home Company was to return these risks when required by the New Amsterdam Company.

The resolution provides that the reinsurance shall be in the name of and for the benefit of the policyholders whose risks were reinsured, not all their policyholders, but only for the benefit of those whose policies issued from the home office; this in itself was, I think, a violation of the statute forbidding corporations from giving preferences.

It may be said that this company was not insolvent, and the directors did not know such to be the fact. The answer to that is that they knew that they had risks enough in Chicago to render them insolvent if there was a total loss.

They knew that an immense fire had occurred there, and that they might be insolvent and probably were, and as the facts since developed show they were; and although they passed a resolution looking to the supply of any amount as to which their capital might be impaired, their stockholders were not required to comply with any such resolution. The whole theory upon which they expected to continue business was that they could compromise it with their Chicago creditors by paying a percentage of the amounts due under their policies.

These facts seem to me to show that they contemplated not only the possibility but the probability of their not being able to pay their Chicago losses in full.

Under these circumstances the company take $40,000 of the assets of the company which belonged to the creditors, and prefer by reinsurance a certain class of policyholders to the exclusion of all others. This was giving a preference to a certain class who might thereafter become creditors of the company, which the directors had no right to do. It is not necessary to pass upon the question whether, under the circumstances of this case, if the reinsurance had been effected for the benefit of the New Amsterdam Company, the directors would have been protected, for the insurance was not done in that way. The result of this operation is that the policyholders at the home office use the money contributed partially by the Chicago policyholders for the purpose of putting their policies beyond the contingency of any loss which might arise from the inability of the New Amsterdam Company to pay all its losses — money which the Chicago policyholders had the right to demand should be kept to answer their losses. It may be asked, what difference does it make to the Chicago policyholders whether the reinsurance was

effected in the name of the New Amsterdam Company or in the name of the policyholders?

If the insurance is made in the name of the company, in case of the payment to the company of any loss which has been reinsured, all the creditors receive the benefit from the payment of such loss, and they all receive the same dividend upon their claims; whereas if the reinsurance is made in the name of the policyholder, and a loss occurs, the policyholder who is reinsured has his loss paid to him in full by the company in which he has been reinsured, while another policyholder who suffers a loss at the same time, and has not been reinsured, gets only a percentage upon his loss. Any construction placed upon the law authorizing reinsurance which would allow reinsurance in favor of the policyholder, brings it into conflict with the statute forbidding a corporation from giving preferences; whereas, if the reinsurance is made for the benefit of the company, the two statutes do not conflict.

The law allowing reinsurance is not for the benefit of individual policyholders, but for the benefit of the whole body.

It seems to me, therefore, that the directors, in making such reinsurance, violated their duty, and are liable to the creditors of the company for the misappropriation of this money.

The receiver in this action represents all the creditors. The directors are undoubtedly entitled to be subrogated to the rights of any policyholders whose losses have been paid by the Home Insurance Company.

In view of the novelty of the question, I shall grant a stay of proceedings upon the judgment until the appeal may be heard at the general term, in case the defendants should desire to appeal.

I have not considered it necessary to determine the first proposition.

The plaintiff must have judgment.